UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY L HOLT,<br>  Plaintiff,<br>v.<br>MARTIN L. FRINK,<br>  Defendant. | Case No. 15-cv-01302-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Docket No. 7 |

Gregory L. Holt, Jr. has filed a habeas petition, asserting, *inter alia*, unconstitutional sentencing and ineffective assistance of trial counsel. Currently pending before the Court is the state's motion to dismiss. According to the state, the petition should be dismissed as time barred. In turn, Mr. Holt invokes equitable and statutory tolling to overcome any statute-of-limitations problem. Having considered the parties' briefs and accompanying submissions, the Court hereby **GRANTS** the state's motion to dismiss.

### I.   FACTUAL & PROCEDURAL BACKGROUND

A.   Timeline of Events

The following facts are undisputed.

Mr. Holt pleaded no contest to, *inter alia*, assault with a semiautomatic firearm. *See* Mot. at 2; Opp'n at 2.

On January 10, 2013, the trial court sentenced Mr. Holt to a term of more than 17 years. *See* Mot. at 2; Opp'n at 2.

On March 11, 2013, Mr. Holt's conviction became final, as he did not challenge his conviction or sentence on direct appeal. *See* Mot. at 2-3; Opp'n at 2-3.

As of one year later, *i.e.*, on March 11, 2014, Mr. Holt had not filed a habeas petition in

federal court. *See* 28 U.S.C. § 2244(d)(1) (providing that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court"); *Doe v. Busby*, 661 F.3d 1001, 1011 (9th Cir. 2011) (stating that, "[u]nder AEDPA, a prisoner in state custody must file a federal habeas petition within one year from the conclusion of direct review of the criminal conviction").

On April 21, 2014, Mr. Holt filed a habeas petition in state court. *See* Mot. at 2; Opp'n at 2. That petition was denied on June 17, 2014. *See* Mot. at 2; Opp'n at 2; Pet.'s Supp. Br., Ex. 3 (state court order). The state court stated that the petition was "denied as untimely," but, "[e]ven if not procedurally barred, relief would have been denied for failure to state a prima facie claim for relief." Pet.'s Supp. Br., Ex. 3 (state court order).

On June 27, 2014, Mr. Holt filed a habeas petition in the California Court of Appeal. *See* Mot. at 2; Opp'n at 2. That petition was denied on July 10, 2014. *See* Mot. at 2; Opp'n at 2; Pet.'s Supp. Br., Ex. 4 (state court order). The appellate court stated: "The petition . . . is denied without prejudice because petitioner has failed to demonstrate he has obtained a ruling on his petition from the Alameda County Superior Court." Pet.'s Supp. Br., Ex. 4 (state court order).

On July 28, 2014, Mr. Holt filed a second habeas petition in the California Court of Appeal. *See* Mot. at 1; Opp'n at 2. That petition was denied on July 30, 2014. See Mot. at 2; Opp'n at 2; Pet.'s Supp. Br., Ex. 5 (docket sheet for appellate court case). The docket sheet for the case simply reflects that "[t]he petition . . . is denied." Pet.'s Supp. Br., Ex. 5 (docket sheet for appellate court case).

On September 2, 2014, Mr. Holt filed a habeas petition in the California Supreme Court. *See* Mot. at 2; Opp'n at 2. That petition was denied on November 19, 2014. See Mot. at 2; Opp'n at 2; Pet.'s Supp. Br., Ex. 6 (California Supreme Court order). The California Supreme Court summarily stated in its order: "The petition . . . is denied." Pet.'s Supp. Br., Ex. 6 (California Supreme Court order).

Subsequently, Mr. Holt retained current litigation counsel of record. *See* Riccardo Decl. ¶¶ 2-6. Mr. Holt filed the currently pending petition in federal court on March 19, 2015.

B.      Critical Time Period

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). Both parties agree that, in the case at bar, the one-year period began running on the day that Mr. Holt's conviction became final, *i.e.*, on March 11, 2013. Thus, Mr. Holt had had until March 11, 2014 (*i.e.*, one year later) a year to file a habeas petition in federal court. But, as noted above, Mr. Holt did not file anything in federal court on March 11, 2014. In fact, he did seek any kind of habeas relief until April 21, 2014, when he filed for relief in state court.

According to the state, Mr. Holt's failure to request any kind of habeas relief by March 11, 2014, means that his current petition is time barred. Mr. Holt disagrees, invoking, in particular, equitable tolling. According to Mr. Holt, he was not able to file a request for habeas relief by March 11, 2014, because – in spite of his diligent efforts – he was not able to secure his legal file from his trial counsel until April 2, 2014.

Both parties basically agree that a determination on the timeliness of Mr. Holt's federal habeas petition turns on the time period between March 11, 2013 (*i.e.*, the date Mr. Holt's conviction became final), and April 21, 2014 (*i.e.*, the date Mr. Holt filed a habeas petition in state court).

In a declaration, Mr. Holt describes what events took place from the date he was sentenced (*i.e.*, January 10, 2013) to the date that he filed the habeas petition in state court (*i.e.*, April 21, 2014). According to Mr. Holt, at his sentencing on January 10, 2013, he asked his trial attorney, Dustin Gordon of Cooper Law Offices, to forward his legal file so that he could prepare a habeas petition. Mr. Gordon said that he would but never did. *See* Holt Decl. ¶ 5. Mr. Holt also maintains that, "[d]uring the 15 month period between January 10, 2013 and April 2, 2014, I wrote numerous letters and placed several telephone calls to Dustin Gordon, or his firm, the Cooper Law Offices . . . in an attempt to obtain my file," but he was not successful. Holt Decl. ¶ 4. On or about March 21, 2014, Mr. Holt finally spoke, by telephone, to a secretary at the Cooper Law Offices, Candy Permillion. He asked Ms. Permillion for his file and she stated that she would

send it. Mr. Holt finally received the file on or about April 2, 2014. *See* Holt ¶ 6. A declaration from Ms. Permillion confirms that she put "the only copy of Greg Holt's client file" in the mail on March 21, 2014. See Permillion Decl. ¶ 2. "To the best of [her] recollection, this was the only copy [she] sent to Gregory L. Holt." Permillion Decl. ¶ 2.

After Mr. Holt received the file on April 2, 2014, it took him less than three weeks to file his state habeas petition on April 21, 2014. *See* Holt Decl. ¶ 8.

C.  Evidence Regarding Mr. Holt's Diligence

As part of the parties' initial briefing, the only evidence to support Mr. Holt's claim that he diligently asked trial counsel for his legal file was his own declaration. Mr. Holt contacted his trial counsel Mr. Gordon, as well as Colin Cooper of the same law firm, to ask if there were any records regarding Mr. Holt's efforts to obtain his file but was essentially rebuffed. *See* Riccardo Decl. ¶¶ 7-8 (stating that, in March 2015, Mr. Cooper said "he had no recollection of any contact made by Mr. Holt," and that, in September 2015, Mr. Gordon never returned a call but Mr. Cooper called back "to state that he would not be able to assist . . . in obtaining a declaration regarding Mr. Holt's efforts to obtain his file from their office"). Mr. Holt made no other attempt to obtain the records or cooperation of Mr. Gordon or Cooper.

Because of this predicament, the Court asked the state, at the initial hearing on the motion to dismiss, whether it would be willing to contact the various facilities where Mr. Holt was housed during the critical time period to determine whether documentation existed as to Mr. Holt's purported efforts to contact his trial counsel, as claimed in his declaration. The state cooperated, and a record was developed. At a second hearing on the motion to dismiss, the Court asked for further development of the record based on concerns, as expressed by Mr. Holt in a supplemental brief, about the adequacy of the record; more specifically, the Court asked the state to make further efforts to obtain documentation. The state did so, and the evidence of record now reflects as follows.

D.  Mail and Phone Records from Jails

During the relevant period, Mr. Holt was housed at four different facilities:

- Santa Rita (January 10 to February 28, 2013).

- San Quentin (February 28 to July 16, 2013).
- High Desert (July 16 to December 2, 2013).
- Florence (December 2, 2013 to June 1, 2014).

1. Santa Rita (January 10 to February 28, 2013)

*Phone records*. Santa Rita was not able to access any phone records prior to February 20, 2013 (because the jail switched systems at that time). For the period February 20 to February 28, 2013, there were ten different phone calls to trial counsel's office. Three of the ten calls came from Mr. Holt's cell block (H/U-07); the remaining calls were made from another cell block. *See* Docket No. 14 (Pet.'s Supp. Br. at 2); Docket No. 15 (Resp.'s Supp. Br. at 2); Docket No. 14 (Pet.'s Supp. Br., Ex. A). The three calls from Mr. Holt's cell block did not actually go through – *i.e.*, they were collect calls and were not accepted. *See* Docket No. 14 (Pet.'s Supp. Br., Ex. A).

*Mail records*. Santa Rita does not track legal mail being sent out from inmates; it tracks only legal mail being sent in. *See* Docket No. 14 (Pet.'s Supp. Br., Ex. A).

2. San Quentin (February 28 to July 16, 2013)

*Phone records*. According to San Quentin, it has "no record of any requested confidential legal calls involving Inmate Holt . . . ." Docket No. 14 (Pet.'s Supp. Br., Ex. B).

*Mail records*. San Quentin does not log "nonlegal" mail. *See* Docket No. 17 (Resp.'s Status Report, Ex. A). San Quentin reviewed the incoming and outgoing legal mail log books for Mr. Holt and found only one entry, dated March 13, 2013. That entry reflects that Mr. Holt received correspondence on that date from the Alameda County Sheriff's Office. *See* Docket No. 14 (Pet.'s Supp. Br., Ex. B). According to Mr. Holt, at each of the four facilities, including San Quentin, he "never sent any mail marked 'legal' mail. This is because I did not know that I needed to do this in order to create a record." Holt Decl. ¶ 2.

3. High Desert (July 16 to December 2, 2013)

*Phone records*. High Desert uncovered only one phone call, on October 9, 2013, that Mr. Holt made to his trial counsel. *See* Docket No. 17 (Resp.'s Status Report, Ex. B).

*Mail records*. High Desert does not log any "nonlegal" mail. *See* Docket No. 18 (Resp.'s Status Report, Ex. A). According to High Desert, it has "zero [legal] mail logs from this offender

5

either outgoing or incoming for this time period." Docket No. 14 (Pet.'s Supp. Br., Ex. C). As noted above, Mr. Holt states that he "never sent any mail marked 'legal' mail. This is because I did not know that I needed to do this in order to create a record." Holt Decl. ¶ 2.

    4.    <u>Florence (December 2, 2013 to June 1, 2014)</u>

*Phone records.* The phone records from Florence show that Mr. Holt did call the Cooper Law Offices ((510) 588-8400) but only on April 2, 3, and 11, 2014. *See* Docket No. 14 (Pet.'s Supp. Br., Ex. D). As noted above, according to Mr. Holt's declaration, he received his legal file from the law offices on April 2, 2014. See Holt Decl. ¶ 6. Therefore, Mr. Holt was calling counsel only on the day that he received the file or thereafter.

Mr. Holt points out, however, that the phone records may not be accurate because, in March 2014, he spoke to a secretary at the law offices which finally led to his getting the legal file on April 2, 2014. *See* Holt Decl. ¶ 6. But nothing in the phone records reflects such a call.

Moreover, it appears that Mr. Holt could have made phone calls to his counsel from a different phone at the jail. Mr. Holt's current habeas counsel spoke to an employee in the Litigation Coordinator's Office who said that "inmates are allowed to use various telephones located in the cell blocks whenever they are free and that records of those calls are not tracked." Riccardo Decl. ¶ 3 (emphasis added). That fact could potentially account for the absence of phone records showing that Mr. Holt called counsel before April 2, 2014 (including the call in March 2014 that finally led to his getting his file on April 2, 2014). On the other hand, the phone records the Court does have show that Mr. Holt did make a fair number of phone calls that were tracked and there is no indication from Mr. Holt how often he used phones that were not tracked.

*Mail records.* The mail records submitted by Florence do not show Mr. Holt sending any mail to or receiving any mail from his trial counsel. But the records are potentially incomplete since it is undisputed that, in March 2014, a secretary in the Cooper law Offices declared that she mailed Mr. Holt's legal file to him. *See* Permillion Decl. ¶ 2. Also, as noted above, Mr. Holt states that he "never sent any mail marked 'legal' mail. This is because I did not know that I needed to do this in order to create a record."

6

## II. DISCUSSION

### A. Legal Standard

AEDPA, as noted above, has a one-year statute of limitations. However, AEDPA's statutory limitations period may be tolled, including for equitable reasons. *See Holland v. Fla.*, 560 U.S. 631, 645 (2010). In his opposition, Mr. Holt argues that his federal habeas petition is not untimely because (1) equitable tolling and (2) statutory tolling should apply under the circumstances. The statutory tolling argument, however, is dependent on the equitable tolling argument. That is, unless Mr. Holt can get equitable tolling for the critical time period of March 11, 2013 to April 21, 2014, he cannot then rely on statutory tolling to cover the later period of April 21, 2014, to November 19, 2014, and overcome the statute-of-limitations bar. Accordingly, the Court focuses on equitable tolling.

The Supreme Court has held that "a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649. Mr. Holt has the burden of proving equitable tolling by a preponderance of the evidence. *See Jones v. Warden, Lab. Corr. Inst.*, No. 2:13-CV-155, 2014 U.S. Dist. LEXIS 29601, at *13 (S.D. Ohio Mar. 7, 2014) ("Mr. Jones does, of course, have the burden of proving the facts supporting his claim of equitable tolling by a preponderance of the evidence."); *Grecu v. Evans*, No. C-07-0780, 2013 U.S. Dist. LEXIS 47800, at *18 (N.D. Cal. Apr. 2, 2013) ("To succeed on his claim to equitable tolling, Mr. Grecu must show by a preponderance of the evidence that he 'has been pursuing his rights diligently,' and that 'some extraordinary circumstance stood in his way.'"); *Sigmon v. Kernan*, No. CV 06-5807 AHM (JWJ), 2009 U.S. Dist. LEXIS 125771, at *22 (C.D. Cal. Mar. 17, 2009) ("Lastly, the petitioner bears the burden of proving that he is entitled to equitable tolling. In resolving factual disputes in the record, this Court will apply the preponderance of the evidence standard.").

In *Luna v. Kernan*, 784 F.3d 640 (9th Cir. 2015), the Ninth Circuit explained that time, for purposes of equitable tolling, is evaluated under two different methods. Under a "stop clock" approach, "the statute-of-limitations clock stops running when extraordinary circumstances first

1  arise, but the clock resumes running once the extraordinary circumstances have ended or when the
2  petitioner ceases to exercise reasonable diligence, whichever occurs earlier." *Id.* at 651. Thus,
3  "[u]nder a pure stop-clock approach, a petitioner needs to show diligence only during the period
4  he seeks to have tolled – *i.e.*, the period during which the extraordinary circumstances prevented
5  timely filing. There is no need to show diligence after the extraordinary circumstances have
6  ended." *Id.* The Ninth Circuit, noted, however, that there was precedent, namely, *Spitsyn v.
7  Moore*, 345 F.3d 796 (9th Cir. 2003), that "requires a petitioner to show diligence through the time
8  of filing, even after the extraordinary circumstances have ended." *Luna*, 784 F.3d at 651. The
9  court then stated:

> At some point, our circuit may need to decide whether it makes
> sense to follow the stop-clock approach and at the same time impose
> a diligence-through-filing requirement. If the objective of the stop-
> clock approach is to give petitioners one full year of unobstructed
> time to prepare a federal habeas petition, a separate diligence-
> through-filing requirement appears to thwart that objective.
> However, under current circuit law, we must apply both the
> diligence-through-filing requirement imposed by *Spitsyn* and the
> stop-clock approach adopted in *Gibbs*.

*Id.* at 651-52.

B.   Santa Rita (January 10 to February 28, 2013)

Although there is evidence to support Mr. Holt's claim that he was diligently trying to contact trial counsel while he was housed at Santa Rita,[1] that evidence is, in essence, immaterial because the critical question is whether Mr. Holt was diligent *as of March 11, 2013*, when his conviction became final. Mr. Holt was no longer housed at Santa Rita as of February 28, 2013, and therefore any efforts he made while at that facility are largely irrelevant to the question of equitable tolling.

---

[1] Although there are no mail records for Santa Rita (through no fault of Mr. Holt), the phone records do support Mr. Holt's claim of diligence. The phone records show that, for the period February 20 to 28, 2013, three phone calls were placed to trial counsel from Mr. Holt's cell block. It is a reasonable inference that Mr. Holt, and not some other inmate, made those three calls, particularly in the absence of any evidence to the contrary. The Court rejects the state's suggestion that Mr. Holt was not diligent in trying to obtain his legal file because trial counsel refused to accept the calls.

1  C.   San Quentin (February 28 to July 16, 2013)

2  San Quentin has no phone records indicating that Mr. Holt made efforts to contact his legal counsel. Mail records are also lacking. Mr. Holt argues that mail records are lacking only because he did not mark his mail as "legal" and, thus, his correspondence to counsel did not make its way into San Quentin's legal mail logs. While the Court is not unsympathetic to Mr. Holt, that does not alter the fact that, ultimately, it is *his* burden to establish equitable tolling. Without any corroborating evidence, Mr. Holt is left with a naked claim that he diligently sent correspondence to trial counsel. Mr. Holt has not pointed to any authority indicating that a declaration from a habeas petitioner, without any corroborating evidence, is enough to make out a prima facie case of equitable tolling. *Cf. Ford v. Hubbard*, 330 F.3d 1086, 1106 (9th Cir. 2002) (noting that petitioner's claim that "he was unsuccessfully trying to obtain the complete record from his counsel during the two year period between 1995 and 1997 . . . is uncorroborated by independent evidence"; concluding that factual record was not sufficiently developed on this point as "the district court . . . did not give the petition an opportunity to amend his petition or expand his declaration and did not hold an evidentiary hearing"), *rev'd on other grounds by Pliler v. Ford*, 542 U.S. 225 (2004). Furthermore, Mr. Holt did not ask for an evidentiary hearing.

D.   High Desert (July 16 to December 2, 2013)

For High Desert, there is evidence that Mr. Holt made only one phone call to trial counsel, and there are no mail records at all regarding correspondence between Mr. Holt and his trial counsel. As above, Mr. Holt asserts that the absence of mail records is due to the fact that he did not mark his mail as "legal." But, as discussed above, it is Mr. Holt's burden to establish equitable tolling.

E.   Florence (December 2, 2013 to June 1, 2014)

For Florence, the evidence is slightly more favorable to Mr. Holt but the evidence is still insufficient to support equitable tolling. Mr. Holt has made some showing that the phone and mail records may not be complete and/or accurate. For example, the phone and mail records do not memorialize that Mr. Holt spoke to the secretary at the law offices in or about March 2014 and that he received his legal file from the secretary on or about April 2, 2014. But even if the records

1  may be lacking, he has not shown that the records are so lacking that they should not be credited at
2  all.  For instance, he has not submitted a declaration pointing to other undocumented
3  correspondence or describing how often he made calls through phones that are not tracked.
4  Moreover, Mr. Holt has, as noted above, the burden of proof and the fact that there may be some
5  problems with prison documentation does not relieve him of his burden.  While the Court does not
6  foreclose the possibility that there may be circumstances where a habeas petitioner cannot be
7  faulted for not having corroborating information for an equitable tolling argument, Mr. Holt has
8  not adequately demonstrated that this is such a case.

### III.   CONCLUSION

Because Mr. Holt has failed to show that he diligently contacted trial counsel at any of the facilities where he was housed (with the possible exception of Santa Rita which, as noted above, is basically irrelevant), he has not satisfied the diligence-through-filing requirement or shown any diligence under the stop clock approach.  Accordingly, Mr. Holt has not met his burden of proving equitable tolling.  The Court therefore grants the state's motion to dismiss.  Mr. Holt's habeas petition is time barred.

Because Mr. Holt has not shown that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), the Court also declines to issue a certificate of appealability.

The Clerk of the Court is instructed to enter judgment in accordance with this opinion and close the file in this case.

This order disposes of Docket No. 7.

**IT IS SO ORDERED**.

Dated: January 12, 2016

_____
EDWARD M. CHEN
United States District Judge